IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PAMELA CHAVEZ,

    Plaintiff,

    vs.                                                                                                                                                                    No. CIV 98-0710 JC/RLP

JOHNSON & JOHNSON PENSION
COMMITTEE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

    THIS MATTER came on for consideration of the parties' cross motions for summary judgment. Plaintiff's Motion for Summary Judgment *(Doc. 29)* was filed February 26, 1999, and Defendant's Motion for Summary Judgment *(Doc. 33)* was filed March 8, 1999. The Court has reviewed the motions, the memoranda and exhibits submitted by the parties, and the relevant authorities. The Court finds that Plaintiff's Motion for Summary Judgment is well taken and will be granted. Defendant's Motion for Summary Judgment is not well taken and will be denied.

**I.    Background**

    Pamela Chavez was hired by Johnson & Johnson's Ethicon division as a Production Team Worker in February 1991. She enrolled in Johnson & Johnson's Long-Term Disability Income Plan for Choices Eligible Employees ("the Plan"). The parties agree that the Plan is an employee health and welfare plan under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461. Defendant Johnson & Johnson Pension Committee is the Plan Administrator for the purposes of ERISA, and Kemper National Services is its claims administrator.

Ms. Chavez injured her back as the result of a fall in 1994. Her back problems worsened in 1995, and her physician, Dr. Zimmerman, confirmed that she had a herniated disc between the third and fourth lumbar vertebrae ("L3-4"). In October 1996, Ms. Chavez was referred to a neurosurgeon, Dr. Glover, after complaining of disabling pain. Tests were ordered by Dr. Glover, including an MRI and a dynamic CT myelogram. Two other physicians, Drs. Jahnke and Suter, were consulted to interpret the test results. The tests indicated that three discs could be herniated, but the tests were not conclusive as to which disc was causing Ms. Chavez' pain. The largest defects were in the L3-4 and L5-S1 discs, with a smaller defect at L4-5. The tests indicated that the herniation was present in the central area of the L3-4 and L4-5 discs, and on the central and left side of the L5-S1 disc. The herniation of the L3-4 disc worsened when Ms. Chavez bent over. The tests also revealed that the L3-4 protrusion might be crowding the nerve roots and causing Ms. Chavez' pain.

Dr. Glover was reluctant to operate because three discs were involved and surgery at three levels increased Ms. Chavez' risks. The tests performed did not indicate clearly what disc was responsible for Ms. Chavez' pain. For example, the L5-S1 herniation appeared to be affecting the left nerve root, but Ms. Chavez complained mostly of pain in her right leg. Therefore, Dr. Glover recommended conservative treatment (i.e., pain medications, muscle relaxants, and epidural blocks) until there was a clearer picture as to which disc was causing the problem. Dr. Glover also recommended that Ms. Chavez be placed on long-term disability leave in the meantime.

Ms. Chavez was placed on short term disability leave from October 1996 until her leave expired on April 20, 1997.[1] Johnson & Johnson was unable to find other work for her. Ms. Chavez

---

[1] "As per Johnson and Johnson policy, once an employee's 26 week Short Term Disability runs out employees are automatically severed from the company and would need to then seek other employment." Letter from Kemper Nat'l Servs., Inc. to Dr. Ben Glover, March 11, 1997 (Ex. H to Valerie Pax Aff., Def.'s Mot. for Summ. J. *(Doc. 33)*).

applied for long term disability benefits under the Plan. According to the terms of the Plan, she was also required to apply for Social Security disability benefits. The administrative law judge hearing her Social Security claim found her to be totally disabled within the meaning of the Social Security Act.

As part of the process of obtaining disability benefits under the Plan, a functional capacity assessment ("FCA") was performed. The physical therapist performing the assessment reported some lumbar spine range of motion limitations, but also reported evidence that Ms. Chavez may have magnified her pain and did not appear to put forth maximum effort.[2] The physical therapist performing the FCA concluded that Ms. Chavez demonstrated the weight handling necessary for her job description but should avoid frequent bending.

Kemper denied Ms. Chavez' application for benefits and her appeal. Ms. Chavez' third-level final appeal was denied by Defendant's Disability Review Committee on October 23, 1997.[3] In the review process, two Kemper in-house physician advisors or consultants, Dr. George Crane and Dr. Alan Gruskin, reviewed Ms. Chavez' file. Dr. Crane noted "inconsistencies" and concluded that "I cannot truly state that this patient is disabled from her employment." Ex. K to Valerie Pax Aff. Dr. Gruskin, in a brief memo, concluded that "[a]lthough it would appear that Ms. Chavez does have some pathology, there appear to be inconsistencies in the testing findings, as well as in the Functional

---

[2] According to the FCA report, Ms. Chavez "was instructed to perform at the maximum safe level possible without reinjury and without pain after testing that would limit usual activities." Ex. I to Valerie Pax Aff., Def.'s Mot. for Summ. J. *(Doc. 33)*.

[3] In the Amended Initial Pre-trial Report *(Doc. 17)*, Defendant asserted that Plaintiff failed to exhaust internal claim appeal procedures. Defendant did not raise this issue in its motion for summary judgment. I do not see any evidence that would support this defense. Therefore, I assume that Defendant has abandoned this position.

Capacity Evaluation." Neither Kemper nor Defendant ordered any further tests of Ms. Chavez or another FCA to resolve the inconsistencies.

## II.     Analysis

The parties agree that the Plan is an employee welfare benefit plan within the meaning of ERISA.  *See* 29 U.S.C. § 1002.  The Supreme Court has held that ERISA preempts state law actions for breach of contract under ERISA regulated plans.  *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987).  ERISA authorizes plan beneficiaries or participants to bring a private civil cause of action to enforce their rights to benefits.  *See* 29 U.S.C. § 1132(a)(1)(B).

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 114 (1989).  If the plan provides such discretionary authority to the plan administrator, then the plan administrator's decision is reviewed under an arbitrary and capricious standard.  *See McGraw v. Prudential Life Ins. Co.*, 137 F.3d 1253, 1258 (10th Cir. 1998).  The parties agree that the arbitrary and capricious standard is appropriate here.  *But see Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1460-61 & n.3 (10th Cir. 1995) (where the dispositive issue is whether plaintiff was totally and permanently disabled and no evidence is presented that eligibility determinations of the plan administrator are to be given deference, the district court is entitled to make a *de novo* finding on the factual question of whether there is total disability).  I accept the arbitrary and capricious standard of review, without deciding the issue, because I conclude that Plaintiff would prevail even under this higher standard.

Summary judgment is appropriate in this case, as both parties indicate in their memoranda. The scope of my review under the arbitrary and capricious standard is limited to the record before Defendant's Disability Review Committee. *See Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992). The parties have had the opportunity to bring to my attention all of the relevant evidence in the record to support their respective arguments. I find that the undisputed material facts establish that Defendant's decision to deny benefits was not a reasonable interpretation of the Plan's terms for three independent reasons: (1) Defendant used a definition of total disability that was materially different from the plain language contained in the Plan; (2) there is no substantial evidence on the record to support Defendant's denial of benefits; and (3) the undisputed evidence in the record shows that Plaintiff's job requires bending and that Plaintiff is unable to perform that function without aggravating her disc injury.

1. **Defendant's decision to deny benefits was based on the wrong definition of "total disability"**

"Total Disability" is clearly and unambiguously defined in the Plan as a two-part definition:

(a) during the portion of any period of disability ***not exceeding 24 months***, plus the duration of the Elimination Period, the complete inability of the Participant, due to Sickness or Injury, to perform all the material and substantial duties of the Participant's ***regular job***, with or without reasonable accommodations, ***AND***

(b) during the remainder, if any, of the period of disability, the complete inability of the Participant, due to Sickness or Injury, to do ***any job***, with or without reasonable accommodations, for which the Participant is (or may reasonably become) qualified by training, education or experience.

Ex. 4 to Def.'s Mot. *(Doc. 33)* at 9. Because Ms. Chavez' period of disability has not exceeded twenty-four months plus the duration of the "Elimination Period," only paragraph (a) applies to her present claim.[4]

Defendant, by its own admission, applied a definition of total disability different from the definition in paragraph (a). Defendant's letter decision states:

> According to the Plan, the term **Total Disability**, as it pertains to your case, is defined as:
>
> a) *during the portion of any period of disability not exceeding 24 months, plus the duration of the Elimination Period, the complete inability of the participant, due to Sickness or Injury, to perform the duties of the participant's regular job,*
>
> *AND*
>
> b) *during the remainder, if any, of the period of disability, the complete inability of the participant, due to Sickness or Injury, to do any job, for which the participant is (or may reasonably become) qualified by training, education, or experience.*

Ex. 8 to Def.'s Resp. to Pl.'s Mot. *(Doc. 31)*. There are two material differences between this definition and the Plan's definition. First, the Review Committee stated that the definition "as it pertains to your case" included paragraph (b). The Review Committee could have denied benefits by concluding that Ms. Chavez did not meet the more stringent (but inapplicable) second paragraph. The letter provides further evidence that the Review Committee may, indeed, have made this mistake by stating that "you were found to have no restrictions and limitations that would preclude your return to work in your own *occupation*." *Id.* (emphasis added). The test in part (a) is whether

---

[4] This Memorandum Opinion and Order does not address whether Ms. Chavez qualifies for long-term disability benefits under the more stringent test in paragraph (b). Should Ms. Chavez' disability continue beyond April 20, 1999, Defendants are entitled to review her continued eligibility for benefits under those provisions.

Ms. Chavez could perform the *regular job* that she held before her disability, not whether she could work in her *occupation*. *See* BLACK'S LAW DICTIONARY (5th ed. 1979) (defining "job" as an employment position; defining "occupation" as particular business, profession, trade or calling; vocation).

The second material difference involves the omission of the language that clarifies that a participant is disabled if the participant cannot "perform all the material and substantial duties" of the Participant's regular job. According to the Plan language, if Ms. Chavez could not perform one of the material and substantial duties of her job, she would be totally disabled. By omitting this language, the Review Committee could have concluded that Ms. Chavez was not disabled because she could perform some of the duties of her job. Once again, the language of the Review Committee's letter provides evidence that this mistake was made by stating that bending was "not considered an essential function of your occupation" even though Plaintiff's job description stated that bending was required approximately thirty minutes per eight-hour day.

Because Defendant's Review Committee used the incorrect definition of "total disability," its decision to deny benefits to Ms. Chavez cannot stand. This error, standing alone, would justify remanding the case to Defendant to apply the correct definition.

### 2. Defendant's decision is not supported by substantial evidence

A plan administrator's decision to deny benefits must be supported by substantial evidence to withstand scrutiny under the "arbitrary and capricious" standard. *See Mein v. Pool Co.,* 989 F. Supp. 1337, 1347 (D. Colo. 1998). The record does not contain substantial evidence that could support a denial of benefits.

Before discussing the evidence in the record, I wish to point out what the record does not contain. The record does not contain a single medical test or physical examination by a medical doctor to contradict the findings of Drs. Zimmerman, Glover, Suter, and Jahnke that Plaintiff has three herniated spinal discs that are causing her pain, that the spinal nerves are being crowded by the protruding discs, and that the problem worsens upon bending. Not one of Defendant's medical doctors examined Ms. Chavez or ordered a single medical test. The best that Defendant's medical doctors can do is point to "inconsistencies" and recommend that benefits be denied without any attempt to resolve those inconsistencies.

Defendant points to three documents in the record to support its denial of benefits. First, Defendant claims that Kemper's in-house physician advisor, Dr. George Crane, "concluded that Plaintiff was not disabled" Valerie Pax Aff. ¶ 23. This assertion by Ms. Pax misrepresents Dr. Crane's conclusion.[5] Dr. Crane concluded, after reviewing the file but not examining Ms. Chavez, that there were "inconsistencies." For example, his analysis pointed out the same difficulty that Dr. Glover had in determining which herniated disc was responsible for Ms. Chavez' pain. He noted central herniation, left-sided herniation, and central stenosis in the MRI and CT scans, compared with Ms. Chavez' complaints of pain in her right leg. He also noted inconsistencies in the

---

[5] Ms. Pax's sworn affidavit repeatedly misrepresents the record. Paragraphs 17, 19, 21, and 23 of her affidavit contain statements that are contradicted by the record. For example, paragraph 17 misrepresents the results of the CT myelogram and MRI that show bulging of all three discs and crowding ("central stenosis") that can explain Ms. Chavez' right side pain. Paragraph 19 is completely contradicted by evidence throughout the record that Ms. Chavez tried physical therapy, used epidural blocks, and used other techniques to reduce pain. Paragraph 21 misrepresents the findings of the FCA therapist, who did not conclude "that the Plaintiff was malingering." Paragraph 23 misrepresents Dr. Crane's conclusion; Dr. Crane never concluded "that Plaintiff was not disabled" but merely concluded that there were inconsistencies that prevented him from concluding that Plaintiff was disabled. I find these misrepresentations by Ms. Pax to be further evidence that the Review Committee's action was not based on the evidence before it.

-8-

FCA performed by the physical therapist. He concluded only that the inconsistencies prevented him from "truly" stating that Ms. Chavez was disabled from her employment.

The second piece of evidence that Defendant claims to rely on is a very brief, half-page informal memorandum by Dr. Alan Gruskin, another in-house Kemper advisor. Dr. Gruskin takes up the mantra of Dr. Crane, stating "[a]lthough it would appear that Mrs. Chavez does have some pathology, there appear to be inconsistencies in the testing findings." Ex. M to Valerie Pax Aff. This informal memo does not provide any foundation for Dr. Gruskin's conclusion, nor does it identify any particular evidence for his conclusions except the FCA. I conclude that it would be unreasonable for the Review Committee to give this memo any weight.

The third piece of evidence is the FCA by physical therapist Theresa Guerin. Unlike the "reports" by Drs. Crane and Gruskin, this assessment provides objective evidence that Ms. Chavez' pain might not be as disabling as Plaintiff claims it to be. Ms. Guerin notes that she instructed Ms. Chavez to perform activities "at the maximum safe level possible without reinjury and without pain after testing that would limit usual activities." Ex. I to Valerie Pax. Aff., at 5. Guerin noted Ms. Chavez displayed only mild to moderate exertion, and reported pain levels greater than her physical movement indicated. Guerin concluded that Chavez did not put forth maximum effort and magnified her symptoms, and that if Ms. Chavez had put forth maximum effort she would have been able to lift more than twenty pounds. However, Guerin also concluded that Chavez should avoid frequent bending, and she noted that Chavez' job description listed "bending, twisting and stooping are required 30 minutes per day" as an essential function. *See id.* at 7.

I conclude that this FCA is the only evidence that can support Defendant's action. However, Defendant exaggerates the importance of the FCA. At best, the FCA indicates that Ms. Chavez, after

several years of pain, is overstating her pain and did not exert herself much during the physical testing. Whether this lack of exertion is due to her obesity,[6] her conservative behavior because of her injury, a desire to exaggerate her condition, or some other reason is unclear. However, it is equally clear that Ms. Chavez has an injury, that she has been experiencing pain from that injury since 1994, and that bending makes the injury worse. I conclude that the FCA is not sufficient evidence by itself to justify denial of long-term disability benefits in light of the substantial evidence presented by Plaintiff's physicians.

### 3. Defendant's decision ignored undisputed evidence that Ms. Chavez cannot perform a material and substantial duty of her job

The undisputed evidence in the CT myelogram report shows that bending aggravates Ms. Chavez' disc problems and that Ms. Chavez should not be bending, flexing, or extending her spine. *See* Ex. C to Valerie Pax Aff. at 2. As the FCA notes, bending, twisting and stooping 30 minutes per day is listed as an essential requirement in Ms. Chavez' job description. In view of the plain language of the job description, Ms. Chavez is unable to perform a material and substantial duty of her job without risking pain and further injury. Therefore, I conclude that the decision of the Review Committee that frequent bending is not considered an essential function is arbitrary and capricious.

ERISA provides that reasonable attorney fees and costs may be awarded, at the discretion of the court, to either party. *See* 29 U.S.C. § 1132(g)(1). The factors to be considered in determining whether to award fees include the degree of bad faith shown by the offending party, the ability of the offending party to satisfy the award, whether the award of fees would deter similar conduct in the

---

[6] Ms. Chavez is 5'2" tall and weighs 227 pounds.

future, and the relative merits of the parties' positions. *See Eaves v. Penn*, 587 F.2d 453 (10th Cir. 1978). I conclude that Defendant's position was unwarranted, the Defendant exhibited bad faith by presenting Valerie Pax's affidavit which misrepresented the record, that Defendant is in a better position to satisfy the award than Plaintiff, and that the award of fees would deter similar conduct in the future. Therefore, I will grant Plaintiff reasonable attorney fees and costs.

Wherefore,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment *(Doc. 33)* is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment *(Doc. 29)* is **granted**. Plaintiff is entitled to, and shall have judgment for, long-term disability benefits retroactive to April 21, 1997 and continuing until such time as it is determined, in accordance with the terms of Defendant's Long Term Disability Income Plan No. 504, that Plaintiff is no longer totally disabled or otherwise eligible. Plaintiff is entitled to, and shall have judgment for, prejudgment interest from the date that payment of each monthly installment should have been made. Plaintiff shall recover costs and reasonable attorney fees upon application in accordance with D.N.M.LR-Civ. 54.1-54.5.

DATED this 22nd day of March, 1999.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

| | |
|---|---|
| Counsel for Plaintiff: | Nancy Cronin-Wagner<br>Duhigg, Cronin, Spring & Berlin, P.A.<br>Albuquerque, New Mexico |
| Counsel for Defendant: | Nicholas J. Noeding<br>Noeding & Moody, P.C.<br>Albuquerque, New Mexico |